**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROGELIO HERNANDEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 5147** |
| | ) | |
| **RONALD HAIN, JOHN HICKEY,** | ) | |
| **OLIVER WILSON, PAUL TIMMERMAN,** | ) | |
| **and PATRICIA BURKE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rogelio Hernandez, a former pre-trial detainee at Kane County Adult Justice Center (the Jail), filed this civil rights lawsuit under 42 U.S.C. § 1983 for inadequate medical treatment following an incident where he fell from his top bunk bed. The defendants include Dr. Patricia Burke, a physician employed by Wexford Health Sources, Inc., which contracts with the Jail to provide medical care. Hernandez has also sued four individuals on the jail staff: Kane County Sheriff Ronald Hain, corrections lieutenant John Hickey, corrections officer Oliver Wilson, and corrections officer Paul Timmerman (collectively, the Kane County defendants). Dr. Burke and the Kane County defendants have moved for summary judgment on Hernandez's inadequate medical care claim, which arises under the Fourteenth Amendment's Due Process Clause. For the reasons explained below, the Court grants the Kane County defendants' motion but denies Dr. Burke's motion.

## Background

The following facts are undisputed except where otherwise noted.  Sheriff Hain is the custodian of the jail and very involved in jail operations.  He personally gets two or three inmate grievances a week.  Kane Cty. Defs.' Resp. to Pl.'s Stat. of Facts ¶¶ 1, 3 (dkt. no. 93).  Sheriff Hain contends that he was not aware of Hernandez's allegations until he was named in the complaint.  Pl.'s Resp. to Kane Cty. Defs.' Stat. of Facts ¶ 37 (dkt. no. 83).

Hernandez was admitted to the jail on April 29, 2019.  Pl.'s Resp. to Dr. Burke's Stat. of Facts ¶ 28 (dkt. no. 84).  On June 10, 2019, Hernandez visited Dr. Burke, the only physician at the jail, and complained of chest pain and arm numbness.  *Id.* ¶¶ 9, 19; Dr. Burke's Resp. to Pl.'s Stat. of Facts ¶¶ 10, 20 (dkt. no. 90).  Hernandez was given an EKG, and it was normal.  Dr. Burke's Resp. to Pl.'s Stat. of Facts ¶ 20.

### A.    Falling incident

On June 16, 2019, at around 1:00 a.m., Hernandez attempted to get out of the top bunk, but he fell onto the floor.  Pl.'s Resp. to Kane Cty. Defs.' Stat. of Facts ¶ 3. Hernandez's fall was reported to defendant Wilson, who notified medical staff.  *Id.* ¶ 13; Dr. Burke's Ex. 1, Hernandez Dep. 14:12-23 (dkt. no. 68-1).  About five minutes later, a nurse arrived.  Pl.'s Resp. to Kane Cty. Defs.' Stat. of Facts ¶ 13.  She evaluated Hernandez, gave him an ice pack and medication, and put him on the doctor's call list. *Id.* ¶ 14; Kane Cty. Defs.' Ex. 7, Wilson Dep. 7:1-22 (dkt. no. 81-7).

Hernandez testified that right after his fall, he noticed that his left hand did not have strength and that "[t]he back and foot" were "asleep."  Hernandez Dep. 14:3-8. Hernandez also submitted affidavits from other detainees who assert that they either

saw him fall or saw him on the floor complaining of pain after the fall.  *See* Pl.'s Ex. J, Inmate Affs. (dkt. no. 10).

**B.      Grievances and subsequent medical care**

After the fall, Hernandez submitted approximately eighteen grievances through the jail's computerized kiosk system, between mid-June and mid-August 2019.  In those grievances, he complained of injuries and pain he associated with the fall.  Pl.'s Resp. to Kane Cty. Defs.' Stat. of Facts ¶ 16.  Jail staff, including Lt. Hickey, are responsible for responding to medical requests and grievances submitted by detainees and, if necessary, contacting medical staff.  *Id.* ¶¶ 17-19.  Lt. Hickey responded to Hernandez's request through the kiosk system, and, when Hernandez's claims persisted, he sent additional e-mails to medical staff to ensure that they were aware of Hernandez's requests.  *Id.* ¶¶ 17-20.  As a general matter, jail staff personnel defer to the medical providers regarding detainee medical care.  *Id.* ¶ 7.  Hernandez's medical records indicate that Dr. Burke prescribed various pain medications following his fall:  ibuprofen (starting on June 18), acetaminophen (starting on June 16), and aspirin (starting on July 5), all of which he took one, two, or three times a day.  Dr. Burke's Ex. 3, Hernandez Med. Rec. at KC DEF 272-273 (dkt. no. 78).

On June 16, in the evening after his fall, Hernandez submitted his first two intake requests, Pl.'s Ex. B & C, Intake Requests (dkt. no. 10), in which he complained of severe pain and requested stronger pain medication, because the ibuprofen he had been given was not working.  A staff member responded and stated that his requests would be addressed at the next available nurse sick call and that his requests had been forwarded to the nurse.  *Id.*  On June 17, Hernandez submitted an additional intake

request, in which he complained of worsening pain and requested to be seen by a doctor. Pl.'s Ex. D, Intake Request (dkt. no. 10). On June 18, Hernandez submitted another request, complaining about a lack of medical care, "indifference," and "minimal medication attention that is not being provided to [him]." *Id.* That same day, medical staff gave Hernandez more ibuprofen, and he also saw a nurse, to whom he reported that his pain was at a level of 6 on a scale of 1 to 10. Pl.'s Resp. to Dr. Burke's Stat. of Facts ¶ 36.

On June 19, Dr. Burke first saw Hernandez regarding the fall. The parties dispute what her initial treatment plan was. Hernandez contends that the "initial treatment plan was for him to walk and tolerate the pain for a week or two and it would lessen." Pl.'s Stat. of Facts ¶ 17 (dkt. no. 83). In contrast, Dr. Burke contends that she advised that Hernandez walk as tolerated and that she anticipated that his symptoms would be resolved in up to two weeks. Dr. Burke's Resp. to Pl.'s Stat. of Facts ¶ 17. Dr. Burke also states that she advised Hernandez that if his symptoms did not resolve, he should contact the medical staff. *Id.* Hernandez was receiving ibuprofen at that time. *Id.*

In his complaint in this case, Hernandez alleged that on June 20, defendant Timmerman denied him the opportunity to receive his morning medicine. Jail records indicate, however—and Hernandez does not dispute—that he received his medicine at 4:15 a.m. because he had court that morning. Pl.'s Resp. to Kane Cty. Defs.' Stat. of Facts ¶¶ 27-28.

On June 25, medical records reflect that Hernandez refused treatment, but the summary judgment record does not indicate why. Pl.'s Resp. to Dr. Burke's Stat. of

4

Facts ¶ 15; Dr. Burke's Ex. 3, Hernandez Med. Rec. at KC DEF 253, KC DEF 265-67, KC DEF 269.  That same day, he submitted a grievance requesting to see a chiropractor and receive Tylenol instead of ibuprofen.  Pl.'s Ex. F, Intake Request (dkt. no. 10).  On June 26, Hernandez submitted another request, in which he stated that he had been waiting patiently to be seen by a specialist.  Pl.'s Ex. G, Intake Request (dkt. no. 10).  Lt. Hickey responded to this grievance on July 1, stating that he was "advised by the Medical Director that you were told to let them know if your problem still persists after two weeks—which would be this Wednesday." *Id.*  Further, Lt. Hickey wrote:  "[i]f you are still having an issue at that time, please write to Medical for a follow up visit." *Id.*  On July 1, Hernandez responded to Lt. Hickey via the Jail's kiosk system.  Hernandez stated that he wanted to see a chiropractor who could perform an x-ray of his spine, which he believed was out of alignment, and he suggested that Dr. Burke was providing inadequate medical care because she had not ordered an x-ray.  *Id.*  On July 2, Lt. Hickey responded and stated that he "will let the Medical Director know that you are requesting to be seen again." *Id.*

On July 3, Dr. Burke saw Hernandez for a visit.  During this visit, he complained of continued numbness and that his pain was getting worse.  Pl.'s Stat. of Facts ¶ 18.  Dr. Burke told Hernandez to practice good posture and that it may take more time to recover.  Dr. Burke's Resp. to Pl.'s Stat. of Facts ¶ 19.  On July 4, Hernandez submitted another grievance, in which he renewed his request to see a chiropractor for pain in his spine and expressed doubt about Dr. Burke's treatment plan.  Pl.'s Ex. H, Intake Request (dkt. no. 10).  Lt. Hickey wrote back on July 8:

> I was advised that you were seen by the doctor on 7/3.  If the doctor
> decided that you do not need to be seen by an outside specialist, I would

> have to defer to her judgement—she has access to your medical files, I do not. The Medical Administrator told me that you were made aware to follow up with medical as needed—please do so.

*Id.* On July 7, before Lt. Hickey had responded, Hernandez submitted another request in which he stated that he was in a substantial amount of pain and was sleeping on the floor because it was too painful to climb into the top bunk, and he shared information about a specific chiropractor he wished to see. Pl.'s Ex. I, Intake Request (dkt. no. 10). That same day, a nurse responded and stated that his request had been forwarded to the medical administrator. *Id.*

On July 8, Hernandez submitted a grievance requesting Sheriff Hain's attention to his medical issues and asking for copies of all his medical grievances and requests. Kane Cty. Defs.' Ex. 5, Hernandez Med. Rec. Excerpts IV at KC DEF 225 (dkt. no. 81-4). Lt. Hickey responded to the grievance only with respect to Hernandez's request for his previously submitted grievances. *Id.* Between July 10 and July 14, Hernandez submitted additional requests in which he expressed that the medical staff was not helping him, stated that he had been sleeping on the floor because he cannot climb into the top bunk, renewed his request for ibuprofen, and renewed his request for an x-ray. *Id.* at KC DEF 227-228. On July 31, he submitted another request for ibuprofen and to see a specialist. *Id.* at KC DEF 230. On August 1, a nurse noted that Hernandez complained of back pain.

On August 3, Hernandez submitted a request to see the doctor, complained of pain, and renewed his wish to see a specialist. On August 3, Hernandez submitted another grievance, in which he again expressed his request to see a chiropractor. *Id.* at KC DEF 231. Medical staff forwarded his requests to a medical administrator. On

August 7, a medical staff member, Kim Kczerniak, responded to Hernandez's grievance and reiterated to him that Dr. Burke did not believe that an x-ray was medically necessary, because his pain symptoms were not attributable to bone or disc, and therefore an x-ray would not be useful. *Id.* On August 13 and August 17, Hernandez submitted additional grievances describing his pain and injuries and expressing his frustration that he had not gotten an x-ray. *Id.* at KC DEF 232.

On August 23, Dr. Burke saw Hernandez for a final visit. She observed that Hernandez had been provided with aspirin, ibuprofen, and acetaminophen for his pain. Hernandez again complained of arm numbness, but Dr. Burke noted in his medical records that his complaints were different from his prior complaints. She ordered an x-ray, not (she contends) based on medical necessity, but rather for Hernandez's own reassurance. Dr. Burke processed Hernandez's request to move him to a bottom bunk, and he was assigned to a bottom bunk. Hernandez Med. Rec. Excerpts IV at KC DEF 233.

Hernandez had an x-ray of the lumbar spine and thoracic spine on August 28, 2019; the x-ray was normal, save for some mild osteoarthritis. Pl.'s Resp. to Dr. Burke's Stat. of Facts ¶¶ 19-21, 24-25. Hernandez does not dispute Dr. Burke's contention that "if the fall had been so grave as to cause a major fracture (as an x-ray would show), the fracture would have been clinically evident before an x-ray was performed." *Id.* ¶ 21.

Further, the parties agree that Dr. Burke assessed Hernandez periodically and noted that there was no evidence of a medical problem that needed any other attention besides the plan of care she provided: "to maintain good posture and utilize stretches and exercise." *Id.* ¶ 23. She also observed during her examinations that Hernandez

had very poor posture, which often aggravates back pain.  *Id.*  Hernandez was released from custody on September 11, 2019.

Hernandez filed this lawsuit on July 30, 2019.  He contends that defendants provided him with inadequate medical care, in violation of the Fourteenth Amendment. He also contends that he has ongoing symptoms from the fall affecting his shoulder and back.  Hernandez Dep. 20:9-13.  Hernandez testified that it hurts to breathe, and his left foot and hip are asleep.  *Id.*  He further testified that these conditions have impacted his ability to work.  *Id.*at 20:14-17.  Hernandez seeks injunctive relief in the form of the jail installing landers on cell bunks, money damages, medical care from an outside medical agency, and payment of his medical bills by the defendants.

## Discussion

To obtain summary judgment, the defendants must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (internal quotation marks omitted).  The Court views the evidence and draws all inferences in favor of the nonmoving party.  *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).  The plaintiffs must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial."  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Cervantes*,

914 F.3d at 564.

### A.    Inadequate medical treatment claim

As a threshold matter, Dr. Burke and the Kane County defendants erroneously briefed Hernandez's claims applying the standard used for assessing claims under the Eighth Amendment.  Kane County Defs.' Opening Mem. at 6-7 (dkt. no. 80); Dr. Burke's Opening Mem. at 2-6 (dkt. no. 74).  This is quite obviously the wrong standard, and the Court could deny the defendants' motions on this basis.  The Court has nonetheless assessed the parties' dispute using the correct legal standard but necessarily has done so without the benefit of any arguments by the defendants regarding that standard.

The Eighth Amendment standard requires an imprisoned person to show that the defendants were deliberately indifferent toward a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  But Hernandez "was a pretrial detainee at the relevant time in this case, not a prisoner serving a sentence after a criminal conviction." *Gaston v. Beatty*, No. 17 C 1798, 2020 WL 1288878, at *4 (N.D. Ill. Mar. 18, 2020). Thus under controlling Seventh Circuit authority, "the correct standard of review for his inadequate medical treatment claim[] is not deliberate indifference, but rather the somewhat less stringent standard of objective reasonableness."[1]  *Id.*; *Miranda v. Cty. of Lake*, 900 F.3d 335, 351-52 (7th Cir. 2018) ("medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to [an] objective

---

[1] In her brief, Dr. Burke initially cites the correct "objective reasonableness" standard, Dr. Burke's Opening Mem. at 4, 6-8, but her brief primarily analyzes Hernandez's claims based on the "deliberate indifference" standard.  *Id.* at 5 ("Regardless of the standard applied, it is well established that the prohibition of deliberate indifference to a prisoner's serious medical needs does not require that an inmate be allowed to dictate the medical care he receives or that he be provided with his own choice of treatment. . . .").

unreasonableness inquiry"); *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018); *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019).

Accordingly, to prevail on his inadequate medical care claim, which arises under the Fourteenth Amendment's Due Process Clause, Hernandez must first establish that the "defendants acted purposefully, knowingly, or perhaps . . . recklessly when they considered the consequences of their handling of [Hernandez's] case." *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 353). He is not required to prove that the defendants had an intent to cause harm; what is at issue is "the defendant's state of mind . . . with respect to the bringing about of certain physical consequences in the world." *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Second, the Court considers whether "the challenged conduct was objectively reasonable." *Ortiz*, 937 F.3d at 942-43 (quoting *McCann*, 909 F.3d at 886). The seriousness of Hernandez's condition is "a component of the analysis of the objective reasonableness of the defendant's treatment of the plaintiff." *Whitney v. Khan*, No. 18 C 4475, 2021 WL 105803, at *5 (N.D. Ill. Jan. 12, 2021) (Kennelly, J.). (citing *Kingsley*, 576 U.S. at 397).

The objective reasonableness "standard 'requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable.'" *Turner v. Reena*, No. 17 C 2434, 2019 WL 2357031, at *3 (N.D. Ill. June 4, 2019) (Kennelly, J.), *aff'd sub nom.* *Turner v. Paul*, 953 F.3d 1011 (7th Cir. 2020) (quoting *McCann*, 909 F.3d at 886). The Court will first examine Hernandez's claim against Dr. Burke and will then turn to his

10

claim against the Kane County defendants.

**1.    Dr. Burke**

Hernandez asserts a claim for inadequate medical care claim against Dr. Burke, who has moved for summary judgment.  Wexford employed Dr. Burke during the period relevant to this lawsuit.  Wexford, "a private company that contracted with [Kane County] to provide detainees' medical care, [is] considered [a] state actor[] amenable to suit under section 1983." *See Miranda*, 900 F.3d at 346-47.

Hernandez contends that Dr. Burke (1) ignored his complaints and grievances of increasing pain and numbness from the fall and instead continued the existing treatment plan—prescriptions of ibuprofen, acetaminophen, and aspirin as well as instructions to practice good posture, stretch, and exercise; (2) failed to promptly get him an x-ray, which he first requested in a grievance he submitted on July 1 and again requested during an in-person visit with Dr. Burke on July 3; (3) neglected to refer him to a specialist—specifically, a chiropractor; and (4) undertook no diagnostic tests, despite her prediction that he should have recovered within about two weeks.  Pl.'s Resp. Mem. at 3-4, 6-8 (dkt. no. 85).  In short, Hernandez argues that Dr. Burke's "refusal to alter Hernandez's course of treatment despite his repeated complaints that the medication was not working and his pain and numbness was getting worse is sufficient to defeat her motion for summary judgment and for Plaintiff to have a trial on these facts." *Id.* at 8.

In seeking summary judgment, Dr. Burke contends that Hernandez was "appropriately and timely assessed, provided with medications for pain management, given directions to assist with his resolving his complaints, and provided with x-rays of

his lumbar and thoracic spine." Dr. Burke's Opening Mem. at 2. She argues that she is entitled to summary judgment because Hernandez's argument ultimately boils down to "his own lay opinion that the treatment decisions by Dr. Burke were improper." *Id.* at 5. She also suggests that Hernandez's symptoms did not subside after about two weeks because he has poor posture or because some individuals simply take longer to recover. *Id.* at 7. Further, Dr. Burke argues that an x-ray was not medically necessary based on her medical judgment. *Id.*; Hernandez Med. Rec. at KC DEF 255 (Dr. Burke's note in medical record explaining that Hernandez's symptoms are attributable to soft tissues, such as muscles, and not bone or disc).

In her reply memorandum, Dr. Burke did not respond to Hernandez's contention that she failed to alter the course of treatment despite his worsening pain. *See generally* Dr. Burke Reply Br. (dkt. no. 91). Rather, she emphasizes that (1) the record does not support Hernandez's contention that it was medically necessary for him to see a specialist and (2) that the "delay" in ordering an x-ray did not constitute inadequate medical care. *Id.* at 2-4.

The summary judgment record indicates that Hernandez's contentions regarding Dr. Burke's medical care have merit. As previously mentioned, Dr. Burke did eventually order an x-ray, but only for Hernandez's reassurance, and the results were normal. Moreover, Hernandez's medical records unambiguously reflect that Dr. Burke, based on her medical judgment, assessed that his pain was due to soft tissue, such as muscles, and not bone or disc issues, which is why she did not refer him to a specialist or find an x-ray medically necessary. *See Swisher v. Porter Cty. Sheriff's Dep't*, 761 F. App'x 616, 620 (7th Cir. 2019) (concluding that a doctor's decision not to refer pretrial detainee to

chiropractor based on back pain was not objectively unreasonable). By itself, Dr. Burke's failure to order an x-ray earlier was not objectively unreasonable. Moreover, as previously mentioned, the parties do not dispute that Dr. Burke made sure to assess Hernandez periodically and noted that there was no evidence of a medical problem that needed any other attention besides the plan of care she provided. Pl.'s Resp. to Dr. Burke's Stat. of Facts ¶ 23. Finally, Hernandez eventually saw a chiropractor on September 12, 2019, the day after he was released, but the record reflects that the chiropractor neither prescribed any medication nor implemented a treatment plan. *Id.* ¶ 40; Hernandez Dep. 19:23-20:8.

That aside, however, a reasonable jury could find that Dr. Burke unreasonably adopted a "wait and see" approach, despite knowing from Hernandez's visits that his pain had not subsided after two weeks (as Dr. Burke had predicted) and that to the contrary, it was getting progressively worse. *See Miranda*, 900 F.3d at 354.

As mentioned, in the Eighth Amendment context, the Seventh Circuit has stated that it is, generally speaking, up to medical professionals to decide issues of pain management. *See, e.g.*, *Norwood v. Ghosh*, 723 F. App'x 357, 365-66 (7th Cir. 2018) (ruling, under the deliberate indifference standard, that "treating pain allows considerable room for professional judgment" and "[m]edical professionals cannot guarantee pain-free lives for their patients"); *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("With respect to pain control specifically, our cases recognize that these are matters that require the application of medical expertise and judgment.") (internal quotation marks omitted).

But Hernandez's claim against Dr. Burke arises under the Fourteenth

Amendment, which imposes a less stringent standard for liability than the Eighth Amendment in cases involving claims of inadequate medical care. Focusing "on the totality of facts and circumstances faced by" Dr. Burke, which is required under the objective reasonableness standard, Hernandez has shown that there are genuine factual disputes regarding whether Dr. Burke's treatment of his pain was objectively reasonable under the circumstances. *Ortiz*, 937 F.3d at 942-43.

Reviewing the evidence in the light most favorable to Hernandez, a reasonable jury could find that Dr. Burke knowingly delayed providing Hernandez with additional treatment and that her conduct in doing so was objectively unreasonable under the circumstances. Specifically, there is evidence that would permit a finding that Dr. Burke did not adjust Hernandez's treatment—such as by providing him with stronger, different, or additional pain medication—despite the fact that it was apparent, given his persistent complaints of worsening pain, that her original treatment plan was not working. Unlike in *Ortiz*, where "[t]he record . . . reflect[ed] that [the medical provider] adjusted [the detainee's] treatment plan in response to [his] complaints," including "add[ing] other pain medication when [the plaintiff] complained of lingering arthritic pain," and "prescrib[ing] a knee support brace and . . . a bandage wrap to help alleviate joint pain,'" there is no indication that Dr. Burke took any such steps. *See Ortiz*, 937 F.3d at 943; *see also Voss v. Marathon County*, No. 18 C 540, 2021 WL 148732, at *5, *10 (W.D. Wis. Jan. 15, 2021) (concluding that no reasonable jury could find that the doctor's conduct was objectively unreasonable because "he made adjustments when [the plaintiff] complained that the treatment was ineffective"); *Melvin v. Kramer*, No. 17 C 5943, 2021 WL 2712053, at *2 (N.D. Ill. July 1, 2021) (noting that "[m]edical staff . . . provided

14

consistent treatment, including medication, that resulted in reducing [plaintiff]'s acid reflux, pain levels, and symptoms").  And there is also evidence that Hernandez continued to suffer pain, perhaps at increased levels, as a result.  A jury could reasonably find that Dr. Burke's failure to adjust her treatment plan once Hernandez's continued complaints of pain—indeed his complaints of increased pain—indicated the plan's ineffectiveness was objectively unreasonable.  The time period during which Hernandez has a sustainable claim regarding unnecessary pain covers (at the most) only a little under three months, but that is not a basis to find against him.

Accordingly, the Court denies Dr. Burke's motion for summary judgment.

### 2.      Kane County defendants

Turning to the remaining defendants' motion, the first question appears to be the capacity in which they have been sued.  *See* Kane Cty. Defs.' Opening Mem. at 6.  This is not a serious argument by the defendants.  An "official capacity" suit against a governmental actor is the equivalent of a suit against the governmental actor's employer—in this case Kane County.  It is abundantly clear that Hernandez is not asserting a claim against Kane County, which would require him to establish the elements of a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  *See, e.g., McCann v. Ogle Cty.*, 909 F.3d 881, 888 (7th Cir. 2018).  Rather, he is asserting individual-capacity claims against the Kane County defendants for what he contends they did or failed to do.

Hernandez contends that defendants Wilson, Timmerman, Sheriff Hain, and Lt. Hickey violated the Fourteenth Amendment because (1) none of them "questioned why Hernandez did not see the doctor immediately after his fall"; (2) "Lt. Hickey received

over a dozen grievances from Hernandez and just passed them along"; and (3) Sheriff

Hain never responded to Hernandez's request to "personally review the situation."  Pl.'s

Resp. Mem. at 10.  In a nutshell, Hernandez says that the defendants knew of his

complaints, pain, and suffering but did nothing.  Regarding Timmerman, Hernandez's

main contention is that he failed to provide Hernandez's morning medicine on June 20.

As previously indicated, however, Hernandez did receive his medication that

morning.  *See* Pl.'s Resp. to Kane Cty. Defs.' Stat. of Facts ¶¶ 27-28.

Hernandez's claims against the Kane County defendants are unavailing.  First,

as the defendants argue, Wilson requested medical assistance for Hernandez just

moments after he was alerted of Hernandez's fall, and a nurse promptly provided

Hernandez with ibuprofen and an ice pack.  Def.'s Opening Mem. at 3.  There is no

evidence from which a jury could conclude that defendant Wilson's actions during his

limited contact with Hernandez were in any way objectively unreasonable.  Likewise, the

evidence, cited above, reflects that Hernandez timely received his medicine from

defendant Timmerman on June 20.

Turning to Hernandez's contentions against Lt. Hickey, the record reflects that

Hickey consistently forwarded Hernandez's grievances to medical staff, including in

instances when Hernandez complained that his grievances were not being

addressed.  *See, e.g.*, Dr. Burke's Ex. 4, Hernandez Med. Rec. III Excerpts at KC DEF

184-185 (dkt. no. 81-4).  Finally, there are no specific facts regarding Sheriff Hain—who

never interacted with Hernandez and only learned of Hernandez's complaints at the

time he filed the present lawsuit—that could lead a jury to conclude that his conduct was

objectively unreasonable.

Moreover, the Seventh Circuit has made clear that "[w]hen detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention." *Miranda*, 900 F.3d at 343. Liability in this situation is possible only if "jail officials had reason to know that their medical staff was failing to treat or inadequately treating an inmate. . . ." *Id.* In this case, Hernandez "has pointed to no evidence that would permit a reasonable jury to find any of the [Kane County] defendants had any ability to influence" the course of his medical treatment. *Turner*,, 2019 WL 2357031, at *5. Rather, the record indicates that the responsibility for managing Hernandez's pain and treatment fell on the shoulders of Dr. Burke and other medical staff. *Id.* The evidence demonstrates that the non-medical defendants in question, Lt. Hickey and Sheriff Hain, "reasonably relied" on Dr. Burke "to determine the proper course of care" for Hernandez and "[t]he law allowed these officials to rely on" Dr. Burke "in this way." *McCann*, 909 F.3d at 887-88; *see also Swisher*, 761 F. App'x at 620 (concluding "[n]either [the warden nor the sheriff] was responsible for providing medical care" to the plaintiff and therefore their conduct was not "objectively unreasonable").

In sum, Hernandez cannot point to any evidence from which a reasonable jury could conclude that the conduct of any of the Kane County defendants was objectively unreasonable. The Court therefore grants those defendants' motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of defendants Hain, Hickey, Wilson, and Timmerman [dkt. no. 79] but denies Dr. Burke's

motion for summary judgment [dkt. no. 67]. The case is set for a telephonic status hearing on August 27, 2021 at 9:00 a.m. to set a trial date and discuss the possibility of settlement. The following call-in number will be used: 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 16, 2021

18